IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KURTIS FIELDS,<br><br>             Petitioner,<br><br>   vs.<br><br>WARDEN GEORGE A. FREDRICK,<br><br>             Respondent. | Case No. 1:23-cv-239<br><br>DISTRICT JUDGE<br>BRIDGET MEEHAN BRENNAN<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND<br>RECOMMENDATION** |

Petitioner Kurtis Fields filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Fields is currently in custody at the Trumbull Correctional Institution serving a term of 34-years-to-life imposed by the Cuyahoga County Court of Common Pleas in *State v. Fields*, Case No. CR-17-620952-C. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Fields's petition.

### Summary of Facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record" *Johnson v. Bell*, 525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of

rebutting that presumption by clear and convincing evidence. *Id.*; *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio, summarized the evidence submitted at trial and the facts underlying Fields's convictions as follows:

> {¶ 3} On February 26, 2015, Jasmine Mathis ("Jasmine") had a small gathering at her apartment on W. 83rd Street in Cleveland. Tyrone Rodgers ("Rodgers"), who was dating Jasmine's sister Jerica Mathis ("Jerica"), arrived at Jasmine's apartment, but after a few minutes Jasmine told him to leave. Video obtained from a security camera located in the first-floor hallway of the building shows that Rodgers, Jasmine, and Jerica went into the hallway of the apartment building. Two males wearing hoodies arrived at the apartment complex, and Rodgers let them into the hallway through the security door. One of the males gave a gun to the other male, who shot Rodgers multiple times, and both men left the building.

> {¶ 4} Cleveland police officers respond to a call of shots fired at the apartment complex. Rodgers was lying on the stairs just inside the building. He was bleeding and going in and out of consciousness. Rodgers died that evening at MetroHealth Medical Cetner as a result of multiple gunshot wounds.

> {¶ 5} Cleveland police officer Vasile Nan spoke to the residents of the apartment building and began investigating the shooting. He learned that Rodgers was visiting Jasmine's apartment. He also learned of the surveillance video, but because the two suspects were wearing hoodies, it was hard to identify them. In early March 2015, the police released two still photographs from the surveillance video, and the investigation led to the

2

names of numerous men. Ultimately, people from the neighborhood identified Fields as the male who shot Rodgers and Fields's codefendant Terry Thomas ("Thomas") as the male who handed Fields the gun.

{¶ 6} On September 8, 2017, Fields was indicted for various offenses associate with the death of Rodgers. On October 2, 2018, a jury found Fields guilty of murder in violation of R.C. 2903.02(A); murder in violation of R.C. 2903.02(B); felonious assault in violation of R.C. 2903.11(A)(1); and felonious assault in violation of R.C. 2903.11(A)(2), all with one- and three-year firearm specifications. On November 7, 2018, the court found Fields guilty of having a weapon while under disability in violation of R.C. 2923.13(A)(2) and (3) as well as notice of prior conviction and repeat violent offender specifications. That same day, the court sentenced Fields to 34-years-to-life in prison. It is from these convictions and prison sentence that Fields appeals.

*State v. Fields*, 2020-Ohio-4740, 2020 WL 5847162, at *1 (Ohio Ct. App. October 1, 2020).

## Procedural Background

*Trial Court Proceedings*

In September 2017, a Cuyahoga County grand jury issued an indictment charging Fields with: Aggravated Murder with a firearm specifications charge, in violation of Ohio Revised Code § 2903.01(A); Murder with a firearm specification, in violation Ohio Revised Code § 2903.02(B); two Felonious Assault with firearm specifications charges, in violation of Ohio Revised Code § 2903.11(A)(1)–(2); two Carrying a Concealed Weapon charges, in violation of Ohio Revised Code § 2923.12(A)(2); Aggravated Murder with

3

firearm, prior conviction, and repeat-violent-offender specifications charges, in violation of Ohio Revised Code. § 2903.01(A); Felonious Assault with firearm, prior conviction, and repeat-violent-offender specifications charges, in violation of Ohio Revised Code §§ 2903.11(A)(1)–(2); Having Weapons Under Disability with a firearms specifications charge, in violation of Ohio Revised Code § 2923.13(A)(2); Having Weapons Under Disability, in violation of Ohio Revised Code § 2923.13(A)(3); Obstructing Justice, in violation of Ohio Revised Code §2921.32(A)(5); and, Tampering With Evidence with a firearm specification charge, in violation of Ohio Revised Code § 2921.12(A)(1). Doc. 13-1, at 6–15.

After filing a series of motions, *see e.g.*, Doc. 13-1, at 18, 30, 55, and waiving his right to a jury trial on the weapons-under-disability charges and the prior conviction and repeat-violent-offender specifications, Fields proceeded to a jury trial on the remaining charges. *See id.* at 59.

In October 2018, a jury found Fields guilty of two murder-with-firearm-specification charges and two felonious-assault-with-firearm-specification charges. *Id.* at 61. In November 2018, the trial court found Fields guilty of two weapons-under-disability charges, the prior-conviction and repeat-violent-offender specifications, and sentenced him to an aggregate sentence of 34 years to life in prison. *Id.* at 62–64.

*Direct Appeal*

Fields, represented by counsel, timely appealed to Ohio's Eighth District Court of Appeals. Doc. 13-1, at 81; *see also id.* at 65–80 (various motions appointing and withdrawing various appellate counsel appointments). Fields presented the following three assignments of error:

1. The convictions were against the manifest weight of the evidence.

2. Appellant's sentence is contrary to law and the record does not support the imposition of maximum consecutive sentences.

3. Mr. Fields was denied the effective assistance of counsel.

Doc. 13-1, at 90.

The State filed a responsive brief. *Id.* at 110–41. In October 2020, the court of appeals affirmed the trial court's judgment. *Id.* at 142–64; *Fields*, 2020 WL 5847162.

Fields, through counsel, appealed to the Ohio Supreme Court. Doc. 13-1, at 165. Fields asserted two propositions of law:

1. A defendant does not receive the effective assistance of counsel where trial counsel fails to move for the recusal of the trial court after an ex parte communications.

2. A defendant does not receive the effective assistance of counsel where trial counsel fails to object to improper witness testimony as the witness has not been tendered as an expert.

*Id.* at 169.

5

The State waived its opportunity to respond. *Id.* at 183. In February 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction over Fields's appeal. *Id.* at 184.

### Application to Reopen Direct Appeal

In January 2021, Fields filed a pro se application under Ohio Appellate Rule 26(B) to reopen his direct appeal alleging ineffective assistance of appellate counsel.[1] Doc. 13-1, at 185–217. Later that same month, the court of appeals denied his Rule 26(B) application as untimely. *Id.* at 218–22.

In February 2021, Fields filed a motion requesting he be given proper notice of the court of appeals decision denying his Rule 26(B) application. *Id.* at 222. The court of appeals granted Fields's motion for proper notice to the extent that it ordered the clerk of court to send a copy of the court's order denying his Rule 26(B) application and reinstated his Rule 26(B) application to allow the State an opportunity to file a response. *Id.* at 232. The State responded to Fields's Rule 26(B) application, *id.* at 233, and Fields field a reply, *id.* at 244. In December 2021, the court of appeals denied Fields's Rule 26(B) application. *Id.* at 248.

In January 2022, Fields appealed the denial of his Rule 26(B) application to Ohio Supreme Court. *See* Doc. 13-1, at 256. Fields asserted one proposition of law in support of his appeal:

---

[1]     Rule 26(B) provides defendants with an avenue to reopen an appeal on the basis of ineffective assistance of appellate counsel. *See Lopez v. Wilson*, 426 F.3d 339, 340 (6th Cir. 2005) (en banc).

6

> Appellant was denied due process of law in violation of the Sixth and Fourteenth Amendments when he was denied the effective assistance of appellate counsel when counsel failed to argue that trial counsel was ineffective for not challenging the lead detective's false testimony that he witnesses appellate sign documents with his left hand, which was material to the case as the perpetrator of the crime was presumed to be left-handed and that counsel was ineffective for failing to move for a mistrial.

*Id.* at 259.

The State waived its opportunity to respond. Doc. 13-1, at 279. In March 2022, the Ohio Supreme Court declined to accept jurisdiction over Fields's appeal under Ohio S. Ct. Prac. R. 7.08(B)(4). *Id.* at 280.

*Petition for Post-Conviction Relief*

In January 2022, Fields filed a petition for post-conviction relief to vacate or set aside judgment of conviction or sentence. Doc. 13-1, at 282. Fields asserted the following three claims:

1. Petitioner was denied the effective assistance of counsel due to his counsel's failure to properly and thoroughly cross-examine the lead detective in this matter, Detective Border.

2. The State of Ohio failed to provide trial counsel, during discovery, copies of the documents Petitioner had allegedly signed, in violation of Petitioner's rights to Compulsory Process and Confrontation of Adverse Witnesses as provided by the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution as well as his Due Process rights to a fair trial as guaranteed by the

> Fifth and Fourteenth Amendments to the United States Constitution.
>
> 3. Petitioner was denied the effective assistance of counsel when his counsel failed to move the trial court to reopen the matter between verdict and sentencing, and hear further evidence upon the reveal of jail calls from co-defendant and State's witness, Terry Thomas, wherein Thomas indicated that he "wanted to make things right."

Doc. 13-1, at 284–86.

The State filed a motion for leave to file an instanter motion to dismiss Fields's petition, a proposed motion to dismiss, and proposed findings of fact and conclusions of law. *See* Doc. 13-1, at 303–58. The trial court granted the State's motion for leave, *id.* at 358, and the State filed an updated proposed findings of fact and conclusions of law, *id.* at 361–87.

In February 2023, Fields filed a motion for leave to file an amended petition for post-conviction relief, Doc. 13-1, at 388, which the state opposed, *id.* at 391. In March 2023, without waiting for trial court to rule on his motion for leave, Fields filed an amended petition for post-conviction relief. *Id.* at 394. In April 2023, the trial court denied Fields's petition for post-conviction relief. *Id.* at 409.

In July 2023, Fields, acting pro se, appealed to the court of appeals the trial court's denial of his petition for post-conviction relief. Doc. 13-1, at 442. He asserted the following five assignments of error:

> 1. The trial court erred, denying appellant due process under the Ohio and U.S.

8

constitutions, denied fundamental fairness and abused its discretion when it denied appellant's postconviction petition on the grounds of res judicata when the evidence at issue was dehors the record and the unsupported claim that appellant waived the issue.

2. The trial court erred, denying appellant due process under the Ohio and U.S. constitutions, denied fundamental fairness and abused its discretion when it denied appellant's claims of constitutional violations of compulsory process, confrontation and those as set forth in *Brady* and its progeny.

3. The trial court erred, denying appellant due process under the Ohio and U.S. constitutions, denied fundamental fairness and abused its discretion when it denied appellant's claim of ineffective assistance of counsel based on evidence dehors the record.

4. The trial court erred, denying appellant due process under the Ohio and U.S. constitutions, denied fundamental fairness and abused its discretion when it denied appellant's postconviction petition without an evidentiary hearing.

5. The trial court erred, denying appellant due process under the Ohio and U.S. constitutions, denied fundamental fairness and abused its discretion when it denied appellant's claim regarding the phone records of Terry Thomas.

Doc. 13-1, at 446.

The State responded, *id.* at 492, and Fields filed a reply, *id.* at 525. In

December 2023, the court of appeals denied Fields's claims on appeal under

9

Ohio's res judicata doctrine. *Id.* at 530; *State v. Fields*, 2023-Ohio-4543, 2023 WL 8643539 (Ohio Ct. App. Dec. 14, 2023).

In January 2024, Fields filed an appeal to the Ohio Supreme Court raising the following four propositions of law:

1. A trial court errs, denies constitutional due process and fundamental fairness and abuses its discretion when it denies a postconviction petition on the grounds of res judicata when the evidence at issue is dehors the record and the claim is unsupported that appellant waived the issue.

2. A trial court errs, denying constitutional due process and fundamental fairness and abuses its discretion when claims of constitutional violations of compulsory process, confrontation and those as set forth in brady and its progeny.

3. A trial court errs, denying constitutional due process and fundamental fairness and abuses its discretion when it denies a claim of ineffective assistance of counsel based on evidence dehors the record.

4. A trial court errs, denies due process and fundamental fairness and abuses its discretion when it denies a petition without an evidentiary hearing when the evidence at issue has yet to be produced by the state.

Doc. 13-1, at 543.

The State waived its opportunity to respond. *Id.* at 570. In March 2024, the Ohio Supreme Court declined to accept jurisdiction of Fields's appeal. *Id.* at 571.

10

*Federal Habeas Corpus Petition*

In January 2023, Fields filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus. Doc. 1. In his petition he raises the following four grounds for relief:[2]

> **GROUND ONE:** Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution when trial counsel failed to move for recusal of the trial court after an ex parte communication with two adverse parties regarding issues material to the Petitioner's defense.
>
> **GROUND TWO:** Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution when trial counsel failed to object to improper witness testimony as the witness was not tendered as an expert.
>
> **GROUND THREE:** Petitioner was denied due process of law in violation of the Sixth and Fourteenth Amendments when he was denied the effective assistance of appellate counsel when counsel failed to argue that trial counsel was ineffective for not challenging the lead detective's false testimony that he witnessed Appellant sign documents with his left hand, which was material to the case as the perpetrator of the crime was assumed to be left-handed and that counsel was ineffective for failing to move for a mistrial.
>
> **GROUND FOUR:** Petitioner's Due Process Rights as guaranteed by the U.S. Constitution were violated when the State failed to provide documents that the Petitioner was supposed to have signed in the presence of the State's detective. The failure to provide the fact that there were no documents signed by the Petitioner and

---

[2]     Given their length, I have not reproduced Fields's supporting facts.

> misrepresent this fact on the stand was a violation
> of federal law pursuant to the Supreme Court's
> decisions in *California v. Trombetta*, 467 U.S. 479,
> *Brady v. Maryland*, 373 U.S. 83, and *Giglio v.
> United States*, 405 U.S. 150.

*See* Doc. 1, at 5–9.  In November 2024, the Warden filed his return. Doc. 13.

Fields did not file a traverse.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.

L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas

petitioners must meet certain procedural requirements to have their claims

reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d

426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations

and rules concerning procedural default and exhaustion of remedies, operate

to limit access to review on the merits of a constitutional claim." *Daniels v.

United States*, 532 U.S. 374, 381 (2001). Although procedural default is

sometimes confused with exhaustion, exhaustion and procedural default are

distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Failure to exhaust applies when state remedies are "still available at the

time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125

n.28 (1982)). But when "state court remedies are no longer available to a

petitioner because he or she failed to use them within the required time

period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting

14

*O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's  failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or

15

"involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor

16

the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## Discussion

*Ground One is Meritless*

In his Ground One claim, Fields argues that his trial counsel was ineffective for failing to move for recusal of the trial court after an alleged ex parte communication between the State, the trial court, and Terry Thomas, who was Fields's co-defendant. Doc. 1, at 5–6.

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first prong is satisfied when a petitioner 'show[s] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Jones*, 46 F.4th at 487 (quoting *Strickland*, 466 U.S. at 694). "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones*, 46 F.4th at 487–88. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jones*, 46 F.4th at 488 (quoting *Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C. § 2254(d) is "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When 2254(d) applies, the question is

18

not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*, 655 F.3d 524, 533–34 (6th Cir. 2011). "Or, in more concrete terms, a federal court may grant relief only if *every* "'fairminded juris[t]'" would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (quoting *Harrington*, 562 U.S. at 101).

*Strickland* commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689–690; *Pinholster*, 563 U.S. at 196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the range of possible 'reasons *Pinholster's* counsel may have had for proceeding as they did'") (citation omitted).

Fields presented his Ground One argument on direct appeal, Doc. 13-1, at 105–107, and the court of appeals issued a decision on the merits, *id.* at 142–64. The combined effect of the court of appeals' *Strickland* analysis and this Court's review under Section 2254(d) is a high hurdle for Fields to overcome. He does not clear that hurdle.

For starters, Fields makes no argument that the court of appeals' decision was contrary to or involved an unreasonable application of *Strickland* or any other relevant Supreme Court precedent. *See* Doc. 1, 5–6;

19

*see also* 28 U.S.C. § 2254(d)(1). And he makes no argument that the court of appeals' decision involved an "unreasonable application of the facts." *See* Doc. 1, 5–6; *see also* 28 U.S.C. § 2254(d)(2). These requirements in Section 2254(d) are notably not mere suggestions that a court can simply ignore. *See Blackmon v. Booker*, 696 F.3d 536, 557 (6th Cir. 2012) (chiding a district court for "ignor[ing] the myriad of limitations that § 2254(d)(1) imposed on its review"). Rather section 2254(d) places "a heavy burden for *a petitioner* to overcome." *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (emphasis added).

Instead of trying to meet his burden Fields simply repeats the arguments previously made to and rejected by the court of appeals on direct appeal. *Compare* Doc. 13-1, at 105–107 (Fields's brief to the court of appeals), *with* Doc. 1, at 5–6 (Fields's federal habeas corpus petition). By merely reiterating his argument that trial counsel should have moved for recusal without mentioning the court of appeals' decision, which rejected that same argument, Fields's fails to overcome the deference this Court owes to the court of appeals decision. *See* 28 U.S.C. § 2254(d).

This is doubly important in Fields's case because the court of appeals found that there was no evidence that "substantive matters regarding Fields's case were discussed" during any conversation that the trial court had with other parties. *Fields*, 2020 WL 5847162, at *9. And without a factual basis for a motion to recuse, Fields's counsel could not have been ineffective

20

for not bringing the motion. *See Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) ("counsel cannot be considered ineffective for failing to raise a meritless claim").

Fields's Ground One claim is thus meritless for purposes of federal habeas corpus review.

Additionally, the legal question underlying Fields' first ground—whether a request to disqualify the trial court should have been made—is not cognizable because it involved a question of state law. When he argued that his counsel was ineffective for failing to seek the trial court's disqualification, Fields relied on Ohio precedent concerning the relevant state test for raising disqualification. *See* Doc. 13-1, at 105. And when it evaluated Fields's ineffective assistance claim on direct appeal, the state court applied the relevant two-prong state-law test to assess whether the alleged ex parte communication constituted grounds for disqualification. *See* 2020 WL 5847162, at *8. Indeed, the court of appeals cited an Ohio case on which Fields relied. *Compare id.* (citing *State v. Nawash (In re Calabrese)*, 798 N.E.2d 10 (Ohio 2002), *with* Doc. 13-1, at 105 (same). Under that test, the court of appeals found "no proof that the judge initiated the conversation or that substantive matters regarding Fields's case were discussed." *See* 2020 WL 5847162, at *9. In other words, the court of appeals found that Fields had not met Ohio's two-prong test such that the trial court would not have been disqualified even if the issue had been raised.

The fact that the state court of appeals resolved Fields's ineffective assistance claim based on state law matters here. In conducting habeas review, this Court does not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Rather, this Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States alleged violations of state laws or rules." *Estelle*, 502 U.S. at 68.

Fields's Ground One claim fails and should be dismissed.

*Ground Two is Meritless*

In his Ground Two claim, Fields argues that his trial counsel was ineffective for failing to object to allegedly improper witness testimony. Doc. 1, at 6–7. Specifically, Fields argues that his trial counsel should have, but did not, object to the admission of expert testimony offered by a witness who was not offered as an expert. *Id.* at 7.

As explained above, this Court applies a "doubly deferential" review to ineffective assistance of counsel claims that were raised and resolved on direct appeal. *Pinholster*, 563 U.S. at 190. This means that a federal court reviewing a claim like Fields's Ground Two claim will "grant relief only if *every* '"fairminded juris[t]"' would agree that *every* reasonable lawyer would have made a different decision." *Dunn*, 594 U.S. at 739–40 (quoting *Harrington*, 562 U.S. at 101).

22

Here, the court of appeals found that Fields's trial "counsel's failure to move to strike [the witness's] testimony was not ineffective." *Fields*, 2020 WL 5847162, at *10. In reaching this conclusion, the court of appeals noted that *Strickland* requires a defendant to show that "that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance." *Id*. at *7. Applying this test, the court found that Fields could not show his counsel's failure to object prejudiced him. *Id*. at 9–10. Specifically, the court of appeals found that trial counsel's failure to object was harmless because, even if counsel had objected, (1) the witness's testimony was relevant and met the requirement of rule 702 of Ohio's rule of evidence, and (2) the witness would have qualified as an expert under Ohio's rules of evidence. *Id*. at 9–10. "Indeed," the court noted, the witness "ha[d] testified as an expert forensic video specialist in multiple cases in the Cuyahoga County Common Pleas Court." *Id*. at 9–10.

For his part, Fields does not challenge the court of appeals' conclusions or argue that the state court unreasonably applied clearly established federal law. As with Fields first ground, his failure to attempt to meet his burden under 28 U.S.C. § 2254(d) necessarily means that he cannot carry that burden. So Fields's Ground Two claim should be rejected as meritless.

Additionally, the question underlying Fields's Ground Two claim—the admission of expert testimony under Ohio law—is not cognizable. In determining that Fields suffered no prejudice, the court of appeals applied

Ohio's rules of evidence and Ohio Supreme Court precedent interpreting those rules. *See Fields*, 2020 WL 5847162, at *9–10. Appling Ohio Rule of Evidence 702, the court of appeals found that the witness's experience and testimony would have met the requirements for expert testimony. *Id.* at *9–10. This Court is not in a position to question the court of appeals application of Ohio's rules of evidence. *See Mack v. Bradshaw*, 88 F.4th 1147, 1162 (6th Cir. 2023), *cert. denied* 145 S. Ct. 243 (2024).

Indeed, Fields provides no basis to believe that this Court could decide whether the court of appeals correctly applied Ohio's rules of evidence, let alone an argument that the court of appeals misapplied those rule when it evaluated  his ineffective assistance claim. The Court should dismiss Fields's Ground Two claim.

*Ground Three Claim is Meritless*

In his Ground Three claim, Fields argues that his appellate counsel was ineffective by not asserting a claim of ineffective assistance of trial counsel. Doc. 1, at 8. In particular, Fields argues that his trial counsel should have objected to testimony by a lead detective that he saw Fields sign documents and saw that Fields was left-handed. *Id.* And, in turn, he says that his appellate counsel was ineffective for not raising this issue on direct appeal. *Id.*

The *Strickland* standard applies to ineffective-assistance-of-appellate-counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To meet that

standard, a petitioner must show that appellate counsel's assistance was objectively unreasonable and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). Appellate counsel is neither obligated to advance every possible argument on appeal, *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983), nor is counsel ineffective for failing to raise an issue that lacks merit, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit").

Fields first presented his Ground Three claim in a Rule 26(B) application to reopen his direct appeal based on ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B).  In resolving Fields's argument, the court of appeals found that Fields's trial counsel appropriately exercised counsel's strategic judgment not to challenge the admissibility of the lead detective's testimony. Doc. 13–1, at 253–55. As the court noted, trial counsel made the strategic decision to "not cross-examine the detective on this point" because he feared that "he could be walking into a trap." *Id.* at 254. And under Ohio precedent, "'[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'" *Id.* (quoting *State v. Leonard*, 818

N.E.2d 229, 264 (Ohio). Further, there was no record basis for appellate counsel to argue "direct perjury." *Id*. at 255. So, even if appellate counsel had raised a claim that trial counsel was ineffective, the claim would have been meritless. *Id*. As a result, the court of appeals found that Fields's appellate counsel was not ineffective for exercising the professional judgment not to raise that claim. *Id*. at 255.

Importantly, Fields makes no effort to challenge the court of appeals' decision. Instead, he seems to view this Court as providing another level of appellate review of his claims. But that is not this Court's role; a federal habeas court does not function as an additional state appellate court for review of state-court decisions on state law or procedure. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988); *see also Burt v. Titlow*, 571 U.S. 12, at 18–19 (2013) (explaining a habeas court's role under 28 U.S.C. § 2254)). So, to the extent that Field simply attempts to obtain another round of review over his ineffective-appellate-counsel claim, his claim fails.

In this instance, the combined effect of *Strickland* and 28 U.S.C. § 2254(d) create a "doubly differential" review that asks, "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. The court of appeals found that appellate counsel "properly decline[d] to raise [the] issue" that trial counsel was ineffective by failing to challenge the admissibility of the lead detective's testimony because any such claim would have failed because trial counsel

26

made a strategic decision and because there was no record support for an argument that the witness committed perjury. Doc. 13-1, at 254–55. Fields does not argue that the court of appeals erred, let alone attempt to show that "*every* 'fair-minded jurist' would agree that *every* reasonable lawyer would have made a different decision." *Dunn*, 594 U.S. at 739–40 (quoting *Harrington*, 562 U.S. at 101). He presents no reason to question the determination that, in light of trail counsel's strategic decision, there was no basis to raise an ineffective assistance claim. In fact, given the "strong presumption of reasonableness" that attaches to counsel's strategic decisions that counsel made a strategic decisions—whether under federal or Ohio law, *see Hale v. Cool*, 122 F.4th 637, 646 (6th Cir. 2024), *Leonard*, 818 N.E.2d at 264—it would be difficult to make such an argument.

Further, Fields presents nothing to support the idea that the court of appeals unreasonably determined the facts when it held that the record provided no support for an argument that the witness committed perjury. This Court should thus defer to the court of appeals' decision, 28 U.S.C. § 2254(d), and find Fields's Ground Three argument meritless.

### Ground Four is Procedurally Defaulted and Meritless

In his Ground Four claim Fields raises a due process claim that the state failed to provide documents allegedly signed by him in the presence of the detective who testified that he was left-handed. Doc. 1, at 9–10. In particular, he argues that this failure violated Supreme Court precedent,

including *Brady v. Maryland*, in light of testimony that he signed documents with his left hand when there were no documents produced to corroborate those statements. *Id* at 9–10.

Fields did not raise this claim on direct appeal, *see* Doc. 13-1, at 90, 169, or in his Rule 26(B) application, *see id.*, at 186. Instead, the first time that Fields raised a *Brady* claim was in his petition for post-conviction relief. *Id.* at 284–86.

To support his argument, Fields relied on portions of his trial transcript in which his counsel raised the issue with the trial court. *See id*. at 292–97. As to this issue, the trial court denied Fields's petition because the basis for his claim was the trial transcript, which was available to him when he filed his original appeal. *Id*. at 426. Because Fields could have raised the issue on direct review, his claim was barred by Ohio's doctrine of res judicata. *Id*. at 425–26.

On appeal, the court of appeals noted that under Ohio's res judicata rule, "'a final judgment of conviction bars a convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any [claim] that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.'" *Id*. at 536 (quoting *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). As a result, a proper postconviction petition could raise only those issues "that could not have been raised on direct appeal because the evidence

28

supporting such issues is outside the record." *Id*. Based on these principles, the court appeals concluded that res judicata barred Fields's claim because "the portions of the transcript" on which Fields relied "were available to him at the time of his trial and at the time of his appeal." *Id*.

Importantly, the Sixth Circuit has held that Ohio's res judicata bar is "actually" and "consistently" enforced by Ohio's courts. *Hoffner v. Bradshaw*, 622 F.3d 487, 498 (6th Cir. 2010). It thus represents an adequate and independent basis to foreclose federal habeas review of a constitutional issue. *See id*.; *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001).

As a result, because the court of appeals enforced Ohio's res judicata bar as Fields's Ground Four claim, the res judicata rule bars review of Fields's due process claim.

It is true that a habeas court can "consider the merits of procedurally defaulted claims" if "the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams*, 460 F.3d at 805–06. Fields, though, does not attempt to show cause or prejudice or that a fundamental miscarriage of justice would result if his claim were not considered. So there is no basis to excuse his default.

So, as with his other claims, Fields's Ground Four claim should be rejected as meritless.

**Conclusion**

For the reasons set forth above, I recommend that Fields's Petition be dismissed.

Dated: February 19, 2025

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).